WESTERN WATERPROOFING COMPA-
NY, INC., Plaintiff-Appellant,

v.

The LINDENWOOD COLLEGES,
Defendant-Respondent.

No. 46559.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 29, 1983.

Miller & Glynn, P.C., Kansas City, for plaintiff-appellant.

Mogab & Hughes, St. Louis, for defendant-respondent.

REINHARD, Judge.

This appeal arises out of an arbitration award of $92,500.00 entered in favor of Lindenwood and against Western in connection with Western's installation of a soccer field for Lindenwood. Lindenwood has filed a motion to dismiss the appeal.

On March 12, 1976, Western and Lindenwood entered into an agreement whereby Western agreed to install a Hy-Play soccer field for Lindenwood. During the course of the work a dispute arose between Western and Lindenwood concerning whether the sidelines area was part of the contract. Western completed the field, including the

side lines, and presented a bill for the additional work of $20,760.00 to Lindenwood, which it refused to pay. Subsequently, Lindenwood complained that the field installed by Western was defective. Western filed suit in St. Louis City Circuit Court for the additional compensation. Lindenwood counterclaimed alleging Western failed to perform the work in a workman-like manner or in the alternative that Western breached an implied warranty that the field was fit for its intended use.

Western filed a demand for arbitration pursuant to an arbitration provision in their contract. Thereafter, Western and Lindenwood filed a joint stipulation in court that their claims would be resolved through arbitration in accordance with the Federal Arbitration Act, Title 9 U.S.C. Section 1, et seq. and the Missouri Uniform Arbitration Act, § 435.350, et seq. A hearing was held and on May 19, 1982, the arbitrators rendered their decision in favor of Lindenwood in the amount of $92,500.00.

On August 17, 1982, Western filed a motion to vacate the award in circuit court. Subsequently, Lindenwood filed a motion to confirm the award and stated, "in the event the Court overrules Western Waterproofing's Motion to vacate said award then defendant requests the Court thereafter confirm said award." On October 22, 1982, the circuit court denied Western's motion to vacate. Subsequently, Western filed its notice of appeal from the motion to vacate. On January 6, the trial court granted Lindenwood's application for confirmation of the award. Lindenwood argues that an appeal may not be taken from the denial of a motion to vacate citing section 435.440, RSMo.Supp.1982.[1]

An order granting a motion to vacate is appealable, however, we agree

that the statute does not authorize an appeal from the denial of a motion to vacate. An order confirming the award is appealable. § 435.440.1(3). Rule 81.05(b) states that when "a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal." As the Supreme Court noted in *State ex rel. State Highway Commission v. Tate,* 576 S.W.2d 529 (Mo. banc 1979), it has not always been clear when final judgment in a particular case appears. That is particularly true here. There are no reported cases interpreting this section of the Uniform Act in Missouri or any other jurisdiction. Rule 81.05(b) seeks to preserve appeals for litigants whose counsel in an abundance of caution or by mistake file premature notices of appeal in such situations. *State ex rel. State Highway Commission v. Tate,* 576 S.W.2d at 531. In its point relied on, Western attacks not only the failure of the trial court to vacate the award, but also the confirmation of the award. Since there is a final judgment, we will consider this a good faith effort to appeal from trial court's confirmation of the award. *Wallace v. Hankins,* 541 S.W.2d 82 (Mo.App.1976). Motion to dismiss the appeal is denied.

At the arbitration hearing, both parties presented witnesses and exhibits on their behalf. The evidence established that in March 1976, Lindenwood and Western entered into an agreement in which Western agreed to install a Hy-Play field in Lindenwood's stadium which was being extensively renovated. The primary tenant for the stadium was to be the St. Louis Football Cardinals who were to use the facility for training camp. In addition, the field was to be used as a soccer field for the Lindenwood

1. Section 435.440.1 provides:
 An appeal may be taken from:
 (1) An order denying an application to compel arbitration made under section 435.355;
 (2) An order granting an application to stay arbitration made under subsection 2 of section 435.355;
 (3) An order confirming or denying confirmation of an award;

 (4) An order modifying or correcting an award;
 (5) An order vacating an award without directing a rehearing; or
 (6) A judgment or decree entered pursuant to the provisions of sections 435.350 to 435.470.

soccer team. The contract price was $115,-550.

The Hy-Play system involved installation of drainage tubing, support systems and a natural growing surface. The Hy-Play sales brochure, promoted Hy-Play as an "exciting new concept in athletic field design and management ... [which] eliminates the muddy field by replacing soil with a scientifically blended growing medium." Hy-Play "never gets muddy ... water filters through immediately won't 'stand,' even in a downpour."

After the field was installed in the spring of 1976, the St. Louis Football Cardinals began practicing on the field. Problems with the field became immediately apparent. Parts of the field were torn-up and holes and divots developed. The Cardinal Football Team suspended use of the field after only a short time, not only to prevent further damage to the field but for the safety of the players. A representative of Hy-Play viewed the field in the latter half of 1976 and was under the impression that rooting of the sod had not developed to adequate depths. The field experienced only moderate use until the spring of 1977. Jim Hart conducted a football camp in July 1977 and again damage to the field occurred. Large pools of standing water were observed on the field. The St. Louis Cardinals used the field in mid July after the Jim Hart football camp and again the field failed to adequately perform. Use of the field was discontinued. By late 1977 most of the grass had died and the field was considered useless. Lindenwood installed an artificial field in the summer of 1978.

Considerable evidence on failure of the field was presented. Lindenwood presented evidence that the trenches in which the drainage tubing was placed were not properly graded and the drainage tubing itself was defective. In addition, there was evidence that a fine layer of clay prevented proper drainage which prevented the turf from rooting to a proper depth. Western presented evidence that Lindenwood had not properly cared for the field and contrib-uted significantly to its deterioration because of overwatering.

The arbitrators did not state the exact cause or causes of the field's failure but concluded they were predominantly "in fact caused by problems inherent in the Hy-Play system" and "were not predominantly contributed to by Lindenwood." Finally, the arbitrators stated that Lindenwood's care of the field after the 1976 season must share in the blame for the field's failure. The arbitrators awarded Lindenwood $92,-500.00.

On appeal, Western asserts that the arbitrators found Lindenwood guilty of contributory negligence and in Missouri that completely bars an action for breach of implied warranty. Consequently, Western asserts the award must be set aside under the Federal Arbitration Act because it constituted a manifest disregard of the law and under the Uniform Arbitration Act, § 435.-405.1(3) because the arbitrators exceeded their powers.

The Uniform Arbitration Act was adopted in Missouri in 1980. Laws 1980, p. 436. There have been no Missouri appellate court decisions interpreting the new act. Under the prior arbitration act, it was stated that the courts favored and encouraged arbitration because its object was to obtain a settlement that would put an end to a dispute and conclude the matter submitted. On appeal every reasonable intendment was indulged in favor of an arbitration award. *Masonic Temple Association of St. Louis v. Farrar,* 422 S.W.2d 95, 109 (Mo.App.1967); See *Stix & Co., Inc. v. Schoor,* 579 S.W.2d 160, 162 (Mo.App.1979). An arbitration award would not be vacated because it was against the law and the evidence. To justify setting aside the award, fraud, corruption or partiality or some misconduct of the arbitrators calculated to prejudice the rights of the parties had to be shown. *Fernandes Grain Co. v. Hunter,* 274 S.W. 901, 904 (Mo.App.1925).

■ Section 435.450 of the Uniform Act provides that the act shall be so construed as to effectuate the general purpose to make uniform the law of those states which

enact it. Consequently, opinions of the courts of other jurisdictions which have adopted the Act are shown greater than usual deference. *Garver v. Ferguson,* 76 Ill.2d 1, 27 Ill.Dec. 773, 389 N.E.2d 1181, 1183 (Ill.1979); *See Southwest Parke Educational Assoc. v. Southwest Parke Community School Trustees Corp.,* 427 N.E.2d 1140, 1147 (Ind.App.1981). We find that for the propositions just stated above, the Uniform Act does not change Missouri law. It has been held that the purpose of the Uniform Arbitration Act is to afford parties the opportunity to reach a final disposition of differences in an easier more expeditious manner than by litigation. In order to facilitate this purpose, judicial review of arbitration awards is limited. *Indianapolis Public Transportation Corp. v. Amalgamated Transit Union,* 414 N.E.2d 966, 969 (Ind. App.1981). Section 435.405.1 of the Missouri Uniform Act provides that an arbitration award may be vacated where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 435.370, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 435.355 and the party did not participate in the arbitration hearing without raising the objection.

Western argues that a mistake of law by the arbitrators constitutes an act in excess of their powers under 435.405.1(3).

■ The courts of the states which have adopted the Uniform Act generally agree that an arbitrator's mistake of law or erroneous interpretation of the law does not constitute an act in excess of the arbitrator's power. *University of Alaska v. Modern Construction, Inc.,* 522 P.2d 1132 (Alaska 1974); *Smitty's Super-Valu, Inc. v. Pasqualetti,* 22 Ariz.App. 178, 525 P.2d 309, 311–12 (1974); *Garver v. Ferguson,* 76 Ill.2d 1, 27 Ill.Dec. 773, 389 N.E.2d 1181 (Ill.1979); *Southwest Parke Educational Assoc. v. Southwest Parke Community School Trustees Corp.,* 427 N.E.2d 1140 (Ind.1981); *Evans Electrical Construction Co., Inc. v. University of Kansas Medical Center,* 230 Kan. 298, 634 P.2d 1079, 1087 (1981); *Board of Directors of Maine School Administrative Dist. v. Teachers Association,* 395 A.2d 461, 463 (Me.1978); *School Committee of West Springfield v. Korbut,* 373 Mass. 788, 369 N.E.2d 1148, 1151 (1977); *Chillum-Adelphi Volunteer Fire Dept., Inc. v. Button & Goode, Inc.,* 242 Md. 509, 219 A.2d 801, 806 (1966); *Lanzo Construction Co. v. City of Port Huron,* 88 Mich.App. 443, 276 N.W.2d 613 (1979); *Grudem Bros. Co. v. Great Western Piping Corp.,* 297 Minn. 313, 213 N.W.2d 920, 922–23 (1973); *Northwestern Security Insurance Co. v. Clark,* 84 Nev. 716, 448 P.2d 39 (1968); *Carolina Virginia Fashion Exhibitors, Inc. v. Gunter,* 41 N.E. App. 407, 255 S.E.2d 414, 417–18 (1979).[2]

**2.** Arbitrators must follow the law if they are commanded to do so by the terms of the arbitration agreement. *University of Alaska v. Modern Construction Co., Inc.,* 522 P.2d 1132, 1140 (Alaska 1974). *See Country Mutual Insurance Co. v. National Bank of Decatur,* 109 Ill.App.2d 133, 248 N.E.2d 299 (1969). Western has cited this latter case in support of its contention that misapplication of the law by the arbitrators constitutes an act in excess of their power.

In *Country Mutual,* the arbitration agreement expressly provided that arbitration was to determine whether the insured was *legally* entitled to recover damages. The Illinois Appellate Court held that since the claim was presented after the expiration of the statute of limitations the insured was not legally entitled to recover damages and the arbitrator's decision to the contrary was in excess of its power. We do not find this principle applicable to our case. Moreover, we note that in *Garver v. Ferguson,* 76 Ill.2d 1, 27 Ill.Dec. 773, 389 N.E.2d 1181

We find no grounds for setting aside the award under the Uniform Act.

■ Section 10 of the Federal Arbitration Act sets forth the same grounds for vacating an award as in the Uniform Arbitration Act. In addition to the grounds specified in the Act, the court may also vacate an arbitrator's award for a manifest disregard of the law. *Dundas Shipping & Trading Co. v. Stravelakis Bros. Co., Ltd.,* 508 F.Supp. 1000, 1003 (S.D.N.Y.1981); *Reynold Securities Inc. v. Macquown,* 459 F.Supp. 943 (W.D.Pa.1978). The application of this exception, though is severely limited. *Office of Supplies, Government of Republic of Korea v. New York Navigation Co.,* 469 F.2d 377, 379–80 (2nd Cir.1972). In order to set aside an arbitration award on the ground of manifest disregard of the law, the complaining party must establish that the arbitrator understood and correctly stated the law but proceeded to ignore it. *San Martine v. Saguenay Terminal Ltd.,* 293 F.2d 796, 801 (9th Cir.1961); *Fukaya Trading Co. v. Eastern Marine Corp.,* 322 F.Supp. 278, 281 (E.D.La.1971); *Fairchild & Co. Inc. v. Richmond F. & P.R. Co.,* 516 F.Supp. 1305, 1315 (D.C.1981).

We find no error of law, let alone a manifest disregard of the law. Western asserts that the arbitrators found Lindenwood guilty of contributory negligence and under Missouri law that is a complete bar to an action for breach of an implied warranty. Western first cites *Mead v. Corbin Equipment, Inc.,* 586 S.W.2d 388 (Mo.App. 1979) in support of its contention. However, this was a products liability case based upon strict liability in tort. It has no application here.

Western also cites *Southern Illinois Stone Co. v. Universal Engineering Corp.,* 592 F.2d 446 (8th Cir.1979) in support of its contention that the arbitrators have violated Missouri law. However, *Southern Illinois Stone Co.* involved the interpretation of Illinois law not Missouri law. Nonethe-

less, we have found no Missouri law on the point and find the Illinois law applied in that case sound. Contrary to plaintiff's assertion, this case does not establish that contributory negligence is a complete bar to a buyer's recovery. *Illinois Stone,* involved an action for breach of warranty for the sale of rock crushing equipment. There the court stated:

It is generally stated that the doctrine of contributory negligence, per se, is not a defense to a contract action based on breach of warranty. [Citations omitted]. However, the courts have recognized that recovery for breach of warranty may be denied where the buyer's misuse of the goods has been the proximate cause of the alleged breach; such misuse is beyond the scope of the seller's warranty.

592 F.2d at 452.

The court went on to note that it was "uncontroverted that the Buyer misused the primary system by setting off small dynamite charges in the mouth of the . . . crusher to clear rock jams," but nonetheless rejected the seller's contention that such a misuse of the goods barred a buyer's right to recover for breach of warranty as a matter of law. *Id.* The court concluded that:

[I]mproper design was the principal cause of the primary system's deficiencies. And, while the buyer may have misused the equipment to some degree, such misuse was not sufficient to bar recovery for breach of warranty . . . . [T]he court was not clearly erroneous in refusing to accept the Sellers' theory of misuse as a total defense to this breach.

592 F.2d at 453.

■ This analysis is plainly applicable to our case under review. The arbitrators clearly found that the principal cause of the field's deficiencies were in the design of the field itself and not Lindenwood's misuse of the field. Problems with the field developed soon after its installation. Linden-

(Ill.1979) the Illinois Supreme Court ruled that a mistake of law would not justify setting aside an arbitration award rendered pursuant to the Uniform Arbitration Act. We find *Detroit*

*Automobile Inter-Insurance Exchange v. Spafford,* 76 Mich.App. 85, 255 N.W.2d 780 (1977), also cited by Western in support of its contention to be similar to *Country Mutual.*

wood's misuse of the field (by overwatering) nine months after its installation was not a complete bar to recovery for breach of implied warranty. There was no error of law.

Affirmed.

KAROHL, P.J., and CRANDALL, J., concur.