688 F.Supp. 1364 (1988)
CLEAN COVERALL SUPPLY CO., INC., Plaintiff,
v.
CONSTRUCTION, BUILDING MATERIAL ICE AND COAL, LAUNDRY, DRY CLEANING AND INDUSTRIAL LAUNDRY AND DRY CLEANING, MEAT AND FOOD PRODUCTS, DRIVERS, HELPERS, WAREHOUSEMEN, YARDMEN AND ALLIED WORKERS, LOCAL UNION NO. 682 OF the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.
No. 87-2297C(4).
United States District Court, E.D. Missouri.
July 12, 1988.
*1365 Charles Alan Seigel, The Stolar Partnership, H. Kent Munson, St. Louis, Mo., for plaintiff.
Fred A. Ricks, Jr., St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
CAHILL, District Judge.
This matter comes before the Court on cross-motions for summary judgment. The plaintiff seeks to overturn an arbitrator's award while the defendant seeks to enforce the decision.
Plaintiff Clean Coverall Supply Co. (CCS) is a corporation operating an industrial laundry service in St. Louis, Missouri. Defendant Local 682 is a part of the Teamsters Labor Union and represents CCS's delivery and pick-up employees. The collective bargaining agreement between Local 682 and CCS contains a broad provision for mandatory binding arbitration of disputes.
In January, 1987, Local 682 filed a grievance. The grievance stated that CCS was in continuing violation of Articles I and II of the collective bargaining agreement in regard to the Monsanto-Queeny plant in St. Louis. Article I provides that Local 682 is the exclusive bargaining agent for all delivery employees who work in St. Louis and St. Louis County (the "Bargaining Unit"). Article II contains a job security clause which specifically limits CCS's rights to have bargaining unit work performed by persons outside of the Local 682 bargaining unit. The grievance stemmed from work done for the Monsanto-Queeny plant in St. Louis by Clean Uniform Supply Co. (CUS), a subsidiary of CCS located in Highland, Illinois. CCS is not equipped to handle the Monsanto-Queeny laundry work itself and CUS bid and received the Monsanto-Queeny contract which requires CUS to pick up and deliver in St. Louis. However, CUS employees are represented by Local 525. Local 682 objected to the Queeny delivery work being handled by employees outside the Local 682 bargaining unit.
The grievance was arbitrated and on December 2, 1987, the Arbitration Board ruled in favor of the union, awarding Local 682 the delivery work for CUS's contract with Monsanto-Queeny and denying any backpay. CCS filed this action seeking to vacate the arbitration decision. The defendant, *1366 Local 682, filed a motion for summary judgment and the plaintiff responded by filing a cross-motion for summary judgment. Both parties agree the case is ripe for summary judgment.
Rule 56 of the Federal Rules of Civil Procedure contains the applicable standard for summary judgment. Summary judgment should be granted where the record does not disclose a genuine issue as to any material fact. Fed.R.Civ.P. 56(c), Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); City of Mt. Pleasant, Iowa v. Associated Electric Coop., Inc., 838 F.2d 268 (8th Cir.1988). There is no dispute between the parties as to the facts and all that remains is the application of law to fact.
The legal standard involved in a court's review of an arbitrator's award is quite stringent. Arbitrators' decisions are not overturned lightly and public policy supports their sanctity. "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paper Workers' Int'l. Union v. Misco, Inc., ___ U.S. ___, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). A court may not reject an arbitrator's findings simply because it disagrees with them and cannot reject an award on the ground that an arbitrator misread the contract. Misco, 108 S.Ct. at 371.
The narrow legal standard which a court applies in reviewing an arbitrator's decision is whether the award "draws its essence from the collective bargaining agreement." Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); W.R. Grace v. Local 759, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983); United Paperworkers v. Misco, Inc., ___ U.S. ___, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).
If the award "draws its essence" from the contract the award is legitimate. A unanimous Supreme Court recently explained this standard by stating that "as long as the arbitrator is even arguably construing the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 108 S.Ct. at 371.
The few Eighth Circuit opinions overturning an arbitrator's decision hold that the arbitrator acted outside the scope of his authority as defined in the contract. St. Louis Theatrical Company v. St. Louis Theatrical Brotherhood, Local 6, 715 F.2d 405 (8th Cir.1983); Centralab, Inc. v. Local 816, 827 F.2d 1210 (8th Cir. 1987). Where a contract contains a broad arbitration clause there is a presumption of arbitrability. A.T. & T. Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 1419, 89 L.Ed. 2d 648 (1986). Parties may provide that a particular issue is not subject to arbitration. A.T. & T., 106 S.Ct. at 1418. In this case, no restrictions exist in the broad application of the arbitration clause contained in Article XII of the collective bargaining agreement. The arbitrator thus had jurisdiction.
In applying the legal standard of review to the arbitrator's decision here, the Court notes that it "does not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." Misco, 108 S.Ct. at 370. Rather, the Court reviews only whether the decision "draws its essence" from the collective bargaining agreement.
The award "draws its essence" from the contract and is, therefore, valid. The arbitrator quotes the applicable provisions of the collective bargaining agreement. Arbitrator's Award, plaintiff's exhibit 1, defendant's exhibit B, pp. 8-9. The arbitrator then construes the contract language, interpreting it to mean that "the company (CCS) has agreed that those having a proprietary interest in the business will not `knowingly' permit outsiders to perform the work of the bargaining unit. That work is the delivery of goods and not the laundering of uniforms. Clearly, the prohibition is directed at `knowingly' permitting others to do the work." Arbitrator's *1367 Award p. 12. The arbitrator goes on to specifically find that "it cannot be doubted that those having `a proprietary interest' knowingly permitted this work to be done by CUS." Arbitrator's Award p. 12.
The arbitrator has interpreted the contract and applied it. This Court finds that the award "draws its essence" from the contract and is valid. CCS argues that CUS is a separate entity. The arbitrator specifically addressed this issue several times (Award pp. 11-13) and the Court, under established precedent, cannot question these findings.
CCS is upset with the arbitrator's award. The arbitrator himself stated that the situation produced by the award is slightly anomolous. Award p. 13. However, the parties contracted to have disputes settled by an arbitrator chosen by them rather than a judge. The parties are in the best position to work this out, as the arbitrator noted, and the public policy of promoting industrial peace is furthered by arbitration. Accordingly,
IT IS HEREBY ORDERED that defendant Local 682's motion for summary judgment is granted and plaintiff Clean Coverall Supply Company's cross-motion for summary judgment is denied.