SHEFFIELD ASSEMBLY OF GOD CHURCH, INC., Respondent,

v.

The AMERICAN INSURANCE CO., et al., Appellant.

No. WD 47479.

Missouri Court of Appeals, Western District.

Feb. 22, 1994.

Patrick L. Dunn, Mitchell, Kristl & Lieber, P.C., Kansas City, for appellant.

Clem W. Fairchild, Fairchild Stang Beal Barber & Sanders, P.C., Kansas City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

This appeal arises from entry of an order confirming an arbitration award after a breach of a construction contract. The American Insurance Company ("American") and Mills/Design Build Group, Inc. ("Mills") appeal from the trial court's order affirming the arbitration award of $475,000.00 in favor of Sheffield Assembly of God Church, Inc. ("Sheffield").

Judgment is affirmed.

On August 15, 1982, Sheffield contracted with Mills for the construction of the "Family Life Center," a multi-purpose addition for Sheffield Assembly of God Church. Mills originally bid to perform the work on a "design/build" basis, meaning that Mills offered a bid to perform both the architectural and construction services under one contract. After extensive negotiations between the parties, Sheffield signed a construction contract with Mills as the general contractor and a separate agreement with George Mills, individually, as the architect. Thus, the parties executed two contracts for the project, a construction contract and a contract for architectural services. The construction contract contained an arbitration clause for the resolution of disputes.

On August 12, 1982, American issued a performance bond binding itself to Sheffield, as obligee, to perform the construction contract in the event Mills failed to perform under the terms of the agreement, or to pay the cost of completion of the project. American declined to issue a performance bond on the design services to be rendered by George Mills.

Construction began on the project in late 1982. After approximately one year had passed, on January 5, 1984, Sheffield terminated the construction contract for default in performance. On October 18, 1984, Sheffield filed suit against Mills and American, as Mills' surety, for failure (1) to perform work in accordance with the plans and specifications; (2) to perform work in compliance with the building code; (3) to continue performance of the contract; and (4) to complete work within designated time specifications of the contract. Both American and Mills, in response, raised mandatory arbitration as an affirmative defense to the action.

On February 6, 1985, Mills filed a demand for arbitration alleging that Sheffield wrongfully terminated the contract. Sheffield counterclaimed in the arbitration proceeding for breach of contract. The trial court granted Mills' motion to stay the civil court proceedings over Sheffield's objections. Arbitration proceedings took place on August 8 and on November 10 through November 14, 1986. American was not a named party to

the arbitration proceedings. On February 25, 1987, before rendering a decision in the proceeding, the arbitrator assigned to the Sheffield–Mills case died.

On August 11, 1989, after it appeared Mills was insolvent, Sheffield filed a motion to dismiss Mills without prejudice and filed its first amended petition for contractual damages solely against American. The trial court denied Sheffield's motion to dismiss Mills and granted American's motion to dismiss the amended petition because the issues raised in the amended petition were the same as those of the arbitration proceeding. The matter was presented to a new panel of three arbitrators. On October 16, 1992, the arbitration panel awarded Sheffield $475,000.00 on its counterclaim. Sheffield then filed an application to confirm the arbitration award and filed a motion for partial summary judgment to make the arbitration award binding against American. Thereafter, Mills filed a motion to vacate the arbitration award, alleging evident bias of one of the arbitrators and contending that the arbitrators had exceeded their authority in awarding damages. After a hearing on the motion, the trial court entered judgment confirming the arbitration award, overruling the motion to vacate and granting Sheffield's motion for partial summary judgment against American.[1] Mills and American appeal from the trial court's judgment.

## Arbitration Award

■ Appellants first claim that the trial court erred in confirming and not vacating the arbitration award of $475,000.00 entered against Mills and on behalf of Sheffield because the verdict was against the weight of the evidence, was unsupported by substantial evidence and misapplied the law. Respondents complain that (1) one of the arbitrators who heard their case was biased; and (2) the arbitrators clearly exceeded their authority by awarding damages to Sheffield in the amount of $475,000.00. This court-tried case is governed by the principles set down in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.

banc 1976), and it must be affirmed unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or it erroneously declares or applies the law.

■ Arbitration proceedings are favored and encouraged by the courts, since the object is to obtain such a settlement as will put an end to the dispute. *Masonic Temple Ass'n v. Farrar*, 422 S.W.2d 95, 109 (Mo.App. 1967). Every reasonable intendment is indulged in favor of an arbitration award. *Id.* Moreover, courts construe the arbitration proceedings with liberality. *Id.* Missouri has adopted the Uniform Arbitration Act ("UAA"), fashioned after the federal act, found in §§ 435.350–.470, RSMo 1986. It has been held that the purpose of the UAA is to afford parties the opportunity to reach a final disposition of differences in an easier more expeditious manner than by litigation. *Western Waterproofing Co. v. Lindenwood Colleges*, 662 S.W.2d 288, 291 (Mo.App.1983). In order to facilitate this purpose, judicial review of arbitration awards is limited. *Id.*

## Evident Bias

■ Section 435.405.1(2) of the UAA provides that an arbitration award shall be vacated upon application of a party where "[t]here was evident partiality by an arbitrator appointed as a neutral. . . ." Appellants argue that one of the arbitrators, David R. Frensley, should have been disqualified from the arbitration panel due to his evident bias. In May 1992, after submission of the arbitration case and before an arbitration award was announced, the arbitration administrator informed the parties that Arbitrator Frensley was associated with an attorney that had represented Gashland Baptist Church in a dispute with Mills ten years prior to the current arbitration. On June 3, 1992, Mills objected to Mr. Frensley continuing as an arbitrator and requested that a new panel of arbitrators be appointed and the case be resubmitted. Sheffield opposed Mills' request for a new panel of arbitrators. On August 25, the American Arbitration Associa-

1. The trial court granted partial summary judgment finding that the only issues left for determination related to what additional damages, if any, Sheffield may be entitled to under its claim of vexatious delay by American.

tion ("AAA") reaffirmed the appointment of David Frensley as arbitrator in the Sheffield–Mills dispute.

In December, appellants took the deposition of Mr. Frensley in connection with their motion to vacate the arbitration award. Frensley testified that he has been a practicing attorney for 23 years and is one of the partners in Frensley and Towerman, P.C. David Hargrave, the attorney associated with the Gashland–Mills arbitration, is of counsel to Frensley's firm pursuant to an office sharing arrangement. Hargrave became affiliated with the firm after Frensley had been selected as an arbitrator in this matter. Frensley testified that in April, 1992, after the arbitrators had reached a decision, he became aware that Hargrave had represented Gashland Baptist Church over ten years ago in a matter involving Mills. Frensley promptly communicated this information to the AAA. Frensley and Hargrave did not discuss the specific facts involved in either arbitration proceeding.

The record is completely devoid of any evidence establishing partiality by Frensley. Courts interpreting the UAA in other jurisdictions have held that in order to show evident partiality, the interest or bias of the arbitrator must be direct, definite and capable of demonstration, rather than remote, uncertain or speculative. *William B. Lucke, Inc. v. G.B. Spiegel,* 131 Ill.App.2d 532, 266 N.E.2d 504, 508 (1970); *Sidarma Societa Italiana di Armamento Spa v. Holt Marine Industries, Inc.,* 515 F.Supp. 1302, 1307 (S.D.N.Y.1981). The arbitration award in the Sheffield–Mills dispute was determined before Hargrave's prior association became known to Frensley. The details of the prior association were not revealed to Frensley. Upon learning of the prior arbitration involving Mills, Frensley immediately notified the AAA. The matter was then fully reviewed by the AAA and both parties were given the opportunity to submit evidence on whether Frensley should be disqualified. After the evidence was submitted, the AAA examined the circumstances regarding the appointment of David Frensley as an arbitrator, and subsequently affirmed his appointment. The trial court denied Mills' motion to vacate the

arbitration award. No evidence of bias, evident or otherwise, exists in the record. Thus, we conclude that appellants have failed to show evident bias or partiality required by § 435.405.1(2) for vacation of the award.

### Exceeded Authority

Appellants next challenge the confirmation of the arbitration award on the basis that the arbitrators exceeded their authority by awarding Sheffield damages that did not arise out of the construction agreement. Section 435.405.1(3) allows a court to vacate an arbitration award if it is shown that "[t]he arbitrators exceeded their powers." Mills and American claim that a substantial portion of the damages resulted from delays occurring under the architectural contract. These damages, appellants suggest, are not attributable to the construction contract, and therefore may not properly be included in the award.

While it is true that the court has power to review an award as to whether the arbitrators exceeded their authority, such power is not pertinent in a case such as this where the real complaint of appellants is that the arbitrators incorrectly resolved issues of causation and damages. The party challenging an arbitration award is not entitled to have a reconsideration of the merits of the dispute. *Holman v. Trans World Airlines, Inc.,* 737 F.Supp. 527, 530 (E.D.Mo.1989). This is not a case where the arbitrators purported to resolve a claim which they were not given authority to resolve. The arbitrators decided only the construction contract issues which were submitted to them. The court in *Masonic Temple Ass'n v. Farrar,* 422 S.W.2d 95, 109 (Mo.App.1967), explained the standards governing review of arbitration awards as follows:

> An arbitration award, regular on its face, not the result of fraud or collusion, finally concludes and binds the parties on the merits of all matters properly within the scope of the award, both as to law and facts, and *the courts will have no inquiry as to whether the determination thereon was right or wrong,* for the purpose of interfering with the award.

(Emphasis added). Section 435.405.1(5) provides that "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." Mistakes of law, like mistakes of fact, are not a sufficient reason to vacate an award. *Lorenzini v. Group Health Plan, Inc.*, 753 S.W.2d 106, 108 (Mo.App.1988). The issue of the proper measure of damages resulting from failure of performance of the construction contract was for the arbitrators. The arbitrators did not exceed the scope of the issues presented for their decision. It was the duty of the arbitrators to consider all of the pertinent factors, and to make an appropriate award. This court will not look behind the award to examine the evidence presented on damages.

Even if this court had the authority to look behind an award and examine the merits of a case, we would be precluded from doing so in this case because appellants, perhaps aware it would be an unnecessary expense, failed to provide this court with the transcript of the arbitration proceedings. For all of the foregoing reasons, Point I is denied.

*Summary Judgment*

Finally, American claims that the trial court erred in granting partial summary judgment against American for liability under a performance bond issued on behalf of Mills. First, American complains that Sheffield failed to show by unassailable proof that there is no material fact and that judgment should be issued against American as a matter of law. American claims that Sheffield has failed to establish that the liability assessed by the arbitrators against Mills constitutes liability under American's separate and distinct agreement. Second, American argues that it was neither a party to, nor participated in, nor had the authority to participate in, the arbitration between Sheffield and Mills and therefore the arbitrators' award under the construction agreement is neither binding nor conclusive upon American as a matter of law.

In reviewing an order granting summary judgment, the record is viewed in the light most favorable to the non-movant.

*ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). The non-moving party is given the benefit of all reasonable inferences. *Id.* It is a fundamental rule of construction that when a contract, which is the subject of a performance bond, is referred to in the bond, that the contract is to be regarded as a part of the undertaking of the surety under the bond. *Home Indem. Co. v. F.H. Donovan Painting Co.*, 325 F.2d 870, 874 (8th Cir.1963). Thus, if a bond is issued for a construction contract which contains an arbitration clause, and the bond incorporates the construction contract by reference, then the surety is also subject to the arbitration clause. *See Kidder Electric of Florida, Inc. v. United States Fidelity & Guaranty Co.*, 530 So.2d 475, 476 (Fla.App.1988).

In this case, American was subject to the arbitration clause included in the construction contract and bound by the $475,000.00 damage award entered against Mills. The construction contract executed by Sheffield and Mills contained a binding arbitration clause. The performance bond issued by American specifically referenced and incorporated the construction contract under the terms of the performance bond. Furthermore, American raised the arbitration proceedings as a defense consistently throughout the circuit court proceedings. If American were not bound by arbitration, then American would not be entitled to raise arbitration as a defense. A judicial admission is an act by a party which in effect concedes a particular proposition to be true for the purposes of the judicial proceeding. *Hewitt v. Masters*, 406 S.W.2d 60, 64 (Mo. 1966). The admission acts as a substitute for evidence and obviates the need for evidence relative to the subject matter of the admission. *May v. May*, 294 S.W.2d 627, 634 (Mo.App.1956).

In its answer, American pled that the civil action should be abated pending the outcome of the arbitration proceeding between Sheffield and Mills. American also objected and refused to answer Sheffield's requests for production and interrogatories on the basis of the pending arbitration and joined to Mills' motion to stay the circuit court case pending

arbitration. Moreover, in its motion to dismiss Sheffield's first amended petition, American requested that this court's August 30, 1985 stay order remain in effect, stating that the determination as to the amount of plaintiff's damages was for the exclusive determination of the arbitrator and that Sheffield could seek to enforce any judgment rendered upon the conclusion of the arbitration proceedings against American as Mills' surety.

 American also contends that its liability is not co-extensive with Mills' liability. Under Missouri law, a surety's liability for contract damages is co-extensive with the liability of its principal. *Howard Constr. Co. v. Teddy Woods Constr. Co.*, 817 S.W.2d 556, 561 (Mo.App.1991). Thus, the rights and liabilities of the surety are commensurate with those of the principal. *City of Kansas City v. Integon Indemnity Corp.*, 857 S.W.2d 233, 236 (Mo.App.1993). The specific issue of whether a surety, not a party to arbitration proceedings, is bound by an arbitration award entered against its principal has not yet been specifically addressed by Missouri courts. The trial judge summed up the issue concisely in his comments, when he wrote:

> In view of the fact that defendant, The American Insurance Co., has taken the consistent position throughout this case that the issues are to be resolved by the arbitration process, it would make a mockery of that process to now adopt the position that the entry of judgment against The American Insurance Co. would deny it due process. Essentially, such would allow the surety to sit back and use the arbitration process of the construction contract as a shield to the lawsuit, adopting the arbitration award if favorable and rejecting it if unfavorable. That is clearly contrary to the reason for encouraging the use of arbitration to resolve such disputes. Since the liability of the surety is co-extensive with that of the principal, and, since The American Insurance Co. has consistently taken the position that the issues in dispute under the contract are to be settled by the arbitration award, the court finds that there are no material issues of fact remain-

ing to be resolved on the issues of damages under the construction contract.

We hold that an arbitration award entered against the principal is equally binding against the surety, even if the surety is not a named party in the arbitration proceedings, when the surety has judicially admitted that it is bound by the arbitration proceeding. *See Kearsarge Metallurgical Corp. v. Peerless Ins. Co.*, 383 Mass. 162, 418 N.E.2d 580 (1981). Based on the foregoing reasons, the arbitration award was binding on American. No material issues of fact remain to be resolved on the issues of damages under the construction contract. Thus, partial summary judgment against American is appropriate. Accordingly, as surety, American is liable for the $475,000.00 damage award entered against Mills in the arbitration proceeding. Point II is denied.

Judgment is affirmed.

All concur.