Robert **MADDEN, Respondent,**

v.

**KIDDER PEABODY & CO., INC., Appellant.**

**No. WD 48894.**

Missouri Court of Appeals, Western District.

Aug. 30, 1994.

Robert O. Lesley, Christopher M. Kato, Kansas City, for appellant.

Dennis E. Egan, Doc Netterville, IV, Kansas City, for respondent.

Before ELLIS, P.J., and BERREY and SMART, JJ.

ELLIS, Presiding Judge.

Kidder Peabody & Co., Inc. ("Kidder") appeals from a judgment of the Circuit Court of Jackson County enforcing an arbitration award entered by a three-member panel of the National Association of Securities Dealers ("NASD") awarding $250,000 to Robert Madden. Prior to 1987, Madden had been a securities broker for E.F. Hutton, a competitor of Kidder. In 1986, John Ellspermann, on behalf of Kidder, contacted Madden regarding an employment opportunity at Kidder. Ellspermann and Madden discussed Madden's possible employment with Kidder on several occasions and, on January 5, 1987, the parties agreed to and signed a "Proposal for Robert Madden" containing terms of Madden's employment with Kidder. Madden began his employment as a stock broker with Kidder on January 6, 1987.

In early 1988, Madden began negotiations to purchase Anchor Savings and Loan ("Anchor")[1] which was the principal asset of a publicly held company, ISC Financial Corporation ("ISC").[2] On March 3, 1988, Madden tendered to ISC a "Letter of Intent" stating he would buy 99% of Anchor's stock. He did so without informing Kidder of any aspect of the deal until March 16, 1988 when he spoke with Ellspermann regarding the deal. On March 17, 1988, Madden disclosed to Ellspermann his specific interest in acquiring Anchor. He then informed Ellspermann in writing of the deal on March 18, 1988, after a press release regarding the deal had been issued by ISC. On March 21, 1988, Ellspermann informed Madden he was being terminated due to his failure to disclose his negotiations regarding Anchor which, according to Kidder, violated NASD rules.

1. Anchor was a federally insured and state chartered institution located in Kansas City, Kansas.

2. At the time it was trying to sell Anchor, ISC was in Chapter 13 bankruptcy.

Madden filed suit against both Kidder and Ellspermann in the Circuit Court of Jackson County claiming breach of employment contract, wrongful termination and misappropriation of commissions. Following both defendants' motions to compel arbitration pursuant to Madden's employment contract, the circuit court ordered arbitration of all claims against Kidder but denied Ellspermann's motion. Ellspermann appealed that decision, and this court ordered arbitration of all Madden's claims against both Kidder and Ellspermann. *See Madden v. Ellspermann,* 813 S.W.2d 51 (Mo.App.1991).

Pursuant to our decision compelling arbitration, Madden filed an arbitration claim against Kidder and Ellspermann with the NASD, claiming misrepresentation in violation of federal securities laws, wrongful termination in violation of public policy, and breach of contract. A three-member arbitration panel held hearings in December, 1992 and July, 1993. On July 27, 1993, the panel denied and dismissed Madden's claims against Ellspermann individually, but found Kidder liable for $250,000 in satisfaction of "all Madden's claims."

Kidder filed a motion in circuit court to vacate the award and Madden moved to confirm. On December 2, 1993, the circuit court entered an order denying Kidder's motion to vacate the award, granting Madden's motion to confirm the award, and entering judgment against Kidder. Kidder appeals this order, alleging that the award is "completely irra-

tional, manifestly disregards the law, and violates public policy." We affirm.[3]

There is some dispute as to whether the Federal Arbitration Act[4] ("FAA") or the Missouri Uniform Arbitration Act[5] ("UAA") applies. Kidder argues that the FAA should apply. Kidder cites several cases for the proposition that because this is a dispute between a national brokerage firm and its registered representative concerning enforcement of that firm's rules which are intended to ensure compliance with federal securities law, the case necessarily involves "interstate commerce" and therefore, the FAA, rather than the UAA, applies.[6] However, in this case, it does not matter which version of the Act applies since the result is the same under either. The two statutes provide very similar grounds for vacating an arbitration award, including situations where the award was procured by corruption, fraud or undue means, where there was evident partiality or corruption, where the arbitrators exceeded their powers, and where the arbitrators wrongfully refused to postpone a hearing or refused to hear pertinent and material evidence. 9 U.S.C. § 10; § 435.405. Kidder raises none of these statutory grounds in its appeal.[7] Rather, Kidder argues three points. It claims first that the award was irrational and made in manifest disregard of the law in that the rules of law under each of Madden's claims support Kidder's position. Second, Kidder contends the award was irrational and made in manifest disregard of the law in that it was not sup-

---

**3.** Initially, Madden argues that Kidder has violated Rule 84.04(c) because Kidder submitted an incomplete record and transcript and because its Statement of Facts is not a "fair, nonargumentative statement of facts." Kidder responds in its reply brief. We do not decide this question because we choose to address the substantive issues in this case.

**4.** 9 U.S.C. §§ 1–16 (1988).

**5.** §§ 435.350–.470, RSMo 1986.

**6.** In its order dated December 2, 1993, the circuit court held that because the claims in this case affect interstate commerce, federal law applies. It cited *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. DeCaro,* 577 F.Supp. 616 (W.D.Mo. 1983) to support the holding. Kidder's argu-

ment is that the circuit court was correct in holding that federal law applies but incorrect in finding that under federal law the panel's award must be affirmed.

**7.** The UAA does contain additional language not present in the FAA. It states that "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award." § 435.405.1. It appears, then, that the UAA has a higher statutory standard than the FAA. However, as we discuss *infra,* Kidder does not even meet the lower standard of the FAA. The trial court reached the same conclusion. In its order of December 2, 1993, the court stated: "[T]he standard under state law to vacate an award is higher and therefore would not have been met in this case either."

ported by any evidence. And third, Kidder asserts the award violates public policy.

In its first point, Kidder claims that, under federal law, in addition to the statutory grounds for vacating an arbitration award, an arbitration award must be set aside if it is completely irrational or made in manifest disregard of the law. *Lee v. Chica,* 983 F.2d 883, 885 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993). However, the application of this exception is severely limited. *Western Waterproofing Co. v. Lindenwood Colleges,* 662 S.W.2d 288, 292 (Mo.App.1983) (citations omitted). Applying federal law, the court in that case said, "In order to set aside an arbitration award on the ground of manifest disregard of the law, the complaining party must establish that the arbitrator understood and correctly stated the law but proceeded to ignore it." *Id.* (citations omitted).

Kidder is unable to meet this standard. The arbitration panel in this case did not provide any reason for its award. The award merely states:

### AWARD

After considering the pleadings, the testimony, and the evidence presented at the hearing, the undersigned arbitrators have decided in full and final resolution of the issues submitted for determination as follows:

1. Claimant, Robert Madden's claims against Respondent John S. Ellspermann are hereby denied and dismissed with prejudice.

2. Respondent, Kidder, Peabody & Company, Inc. is liable for, and shall pay to the Claimant, Robert Madden the sum of $250,000.00 as satisfaction of all of his claims herein.

3. Claimant, Robert Madden's claims for punitive damages and attorneys' fees are hereby denied and dismissed with prejudice.

4. Respondent, Kidder, Peabody & Company, Inc.'s Counterclaim is hereby denied and dismissed with prejudice.

The award does not state any rule of law upon which the panel made its award. It does not even specify upon which of Madden's claims (misrepresentation, wrongful termination, or breach of contract) the award was based. Therefore, Kidder cannot establish that the panel understood and correctly stated the law but then proceeded to ignore it. The award sets forth no law at all.[8]

However, Kidder argues that the arbitrators *must have* ignored well-known principles of law because under each of Madden's claims, had the panel correctly applied the law, it necessarily would have found for Kidder.[9] It argues that the rules of law pertaining to Madden's claims are so well-known that this court should assume the panel knew the rules and yet chose to ignore them. *See Advest, Inc. v. McCarthy,* 914 F.2d 6, 10 (1st Cir.1990). Kidder asserts that the rules pertaining to securities, *respondeat superior,* fraud, wrongful termination, parol evidence, and the statute of frauds are all clear and well-known principles of law with which the panel should be familiar. We disagree.[10] As the court in *Advest* said:

---

8. Kidder points out that in the Case Summary in the NASD award, the panel summarized Madden's claims, listing certain securities laws as well as the common law actions of wrongful termination and breach of contract. However, this is merely a list of Madden's claims. It is certainly not evidence that the arbitrators "understood and correctly stated the law but proceeded to ignore it." *Western Waterproofing,* 662 S.W.2d at 292.

9. Kidder cites numerous cases to support its position as to each of Madden's claims. However, as we discuss *infra,* it does not matter if a court of law would have found in Kidder's favor on any or all of Madden's theories. The fact is, Kidder

has failed to show that the arbitration panel knew the applicable law and disregarded it.

10. In particular, Kidder argues that since its counsel reminded the panel during closing argument of the impact of the statute of frauds, the court must assume the panel knew and understood this facet of contract law. Two of the three arbitrators were non-lawyers. To expect lay arbitrators to know and understand the intricacies of the statute of frauds and the other legal principles announced by Kidder's counsel during closing argument would require this court to engage in speculation of the highest order, and we are unwilling to do so.

In certain circumstances, the governing law may have such widespread familiarity, pristine clarity, and irrefutable applicability that a court could assume the arbitrators knew the rule and, notwithstanding, swept it under the rug. The case at bar, however, is not cut to so rare a pattern: appellant has utterly failed to show that the arbitrators inevitably must have recognized [the controlling rule of law]. 914 F.2d at 10. Since Kidder has failed to demonstrate that the panel understood the law and then chose to disregard it, Kidder has failed to show that the panel manifestly disregarded the law.

■ Furthermore, other than by stating bare assertions, Kidder fails to demonstrate how the award was irrational. While the panel made no findings of fact or conclusions of law, the record demonstrates there could have been any number of rational bases for the decision. Even if the panel made an error in its application of a rule of law, "[a]n arbitrator's mistake of law or erroneous interpretation of law" is not enough to set aside the award. *Western Waterproofing*, 662 S.W.2d at 291 (citations omitted). Other than arguing that "all of Madden's claims were barred by clear and well-known law," Kidder provides no support for the proposition that the award was irrational. We therefore conclude that Kidder has failed to carry its burden of demonstrating that the award in favor of Madden is completely irrational.[11] Point I is denied.

In Point II, Kidder contends that "the award was irrational and made in manifest disregard of the law in that the claims that the award states were decided were not supported by any evidence." As we have already discussed, since Kidder cannot show that the panel understood and correctly stated the law but then disregarded it (or even what evidence the panel relied upon), it cannot show a manifest disregard of the law or that the award was not supported by the evidence. Furthermore, we have already decided that Kidder has not shown how the award was irrational. Other than repeating

that the award "varied from well-known principles of law," Kidder provides no support for the proposition that the award was not supported by any evidence. Point II is denied.

■ Kidder's third point is that the award violates public policy in that it awards damages against Kidder for enforcing an NASD rule. Kidder contends it fired Madden for failing to disclose details regarding the Anchor deal, thereby violating NASD rules designed to protect the public from market manipulation by brokerage employees. Madden, on the other hand, maintains he was fired so that Kidder would not have to pay him the substantial commissions he would have earned from the various accounts he brought into the firm. The panel was free to believe either version. Apparently, the arbitrators did not believe Madden was fired for violating NASD rules. Otherwise, they would not have found as they did. Again, since we do not know the basis of the award, we cannot substitute our opinion for that of the arbitration panel. We therefore cannot find that the panel's award violates public policy. Point denied.

■ In summary, even if Kidder is correct that the arbitrators erred in applying the law and that had a judge decided the case, he would have found for Kidder, Kidder has failed to show that the arbitrators understood and correctly stated the law and then proceeded to ignore it. The fact is, after Madden filed suit in circuit court against Kidder, *Kidder itself* compelled arbitration of the claims. Our courts favor and encourage arbitration because it results in settlement, putting an end to the dispute and concluding the matter. *Masonic Temple Ass'n v. Farrar*, 422 S.W.2d 95, 109 (Mo.App.1967). On appeal every reasonable intendment is indulged in favor of an arbitration award and such an award will not be vacated even if it is against the law and the evidence. *Western Waterproofing*, 662 S.W.2d at 290. Kidder knew that the arbitration panel would consist of lay persons and that arbitrators frequently do not fully understand the law, particularly when dealing with areas of the law as com-

---

11. The award of $250,000 is far less than Madden's prayer of $3,000,000, and since the record does not show how the panel came to that award, we cannot say the amount of the award is completely irrational either.

plex as those involved in this case. Despite this, Kidder forced the matter into arbitration. And now, when the award did not come out the way Kidder predicted, Kidder seeks to have the award overturned. It is not necessary for us to discuss whether Kidder might have prevailed in a court-tried case because even if the arbitrators misapplied the law, Kidder has failed to show that the arbitrators understood the law and then proceeded to disregard it. Kidder wants us to *assume* they understood the law but we are not allowed to assume the arbitrators understood and disregarded the law: it must be clear from the record.

■ In reviewing an arbitration award, the legal standard is quite stringent. *Clean Coverall Supply Co. v. Local Union No. 682*; 688 F.Supp. 1364, 1366 (E.D.Mo.1988). Such awards will not be overturned lightly, and their sanctity is supported by public policy. *Id.*

> An arbitration award, regular on its face, not the result of fraud or collusion, finally concludes and binds the parties on the merits of all matters properly within the scope of the award, both as to law and facts, and the courts will have no inquiry as to whether the determination thereon was right or wrong, for the purpose of interfering with the award.

*Masonic Temple Ass'n*, 422 S.W.2d at 109.

Based on the record before us, the trial court did not err in confirming the arbitration award and entering judgment pursuant thereto against Kidder.[12] Therefore, the judgment is affirmed.

All concur.

---

**12.** Madden has filed a Motion for Damages Due to Frivolous Appeal pursuant to Rule 84.19. For purposes of Rule 84.19, "[a] frivolous appeal presents no justiciable question and, on the face of the record, has no merit and thus holds little prospect for success." *Burns v. DeWitt & Assoc., Inc.*, 826 S.W.2d 884, 888 (Mo.App.1992) (citations omitted). Citing *Burns*, Madden lists several factors tending to demonstrate an appellant's determination to pursue a non-meritorious appeal. He also presents several arguments in

support of his claim for damages. After careful consideration of his claims, we conclude he has failed to demonstrate his entitlement to damages for frivolous appeal.

"Awarding frivolous appeal damages is a drastic remedy which is utilized with extreme caution because its application must not chill an appeal of even slight colorable merit." *Hawthorne v. Hills*, 861 S.W.2d 337, 342 (Mo.App.1993). Madden's Motion is denied.