STATE ex rel.  TELECOM
MANAGEMENT, INC.,
Relator,

v.

Honorable John R. O'MALLY and
Honorable Justine Del Muro,
Respondents.

No.  WD 54459.

Missouri Court of Appeals,
Western District.

Feb. 3, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 31, 1998.

Application for Transfer Denied
May 26, 1998.

Douglas N. Ghertner, Kansas City, for Relator.

Andrew C. Gately, Kansas City, for Respondents.

Before LOWENSTEIN, P.J., and HANNA and ELLIS, JJ.

LOWENSTEIN, Presiding Judge.

This is an original proceeding in prohibition. The dispositive issue presented is: Where there is an agreement to arbitrate, with the agreement providing for a non-judicial method of removal and replacement of arbitrators, may one party, without notifying the other party to the arbitration proceedings, utilize the circuit court, prior to an arbitration hearing and award, by way of mandamus, obtain an order for the arbitrator's recusal because of bias, and hold for naught all pre-award rulings of the arbitration panel?

The relator, Telecom Management, Inc., ("TMI") entered into an agency agreement with Matrix Communications Corporation ("Matrix") to be Matrix's agent to solicit long distance services for pay phones. Matrix held a contract with several long distance providers to solicit their services from the owners of pay phones. The contract contained the following provision for arbitration as the method to settle disputes:

## 15. DISPUTE RESOLUTION AND ARBITRATION.

(A.) If the parties are unable to resolve any controversy or claim or dispute arising out of or related to this Agreement, the dispute shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall take place in the state where the principal office of the party against whom the claim is made is located as indicted in Section 11, Notice.

(B.) For all disputes arising under this Agreement, Arbitration shall be the exclusive remedy. Resort to any court or federal or state commission is prohibited except in accordance with this Agreement and to enforce the arbitration award.

The contract between the TMI and Matrix also stated Commercial Rule 19 would apply. This rule [1] states in part that if any objection by a party to the continued service of an arbitrator arises, the American Arbitration Association would be the sole decision maker as to disqualification. Commercial Rule 47.b, also a part of the contract, states:

> b. Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary party in judicial proceedings relating to the arbitration.

A dispute arose over commissions due and owing TMI. In September of 1995, pursuant to the contract, TMI made a demand for

---

1. **Commercial Arbitration Rule 19.**
   Disclosure and Challenge Procedure
   Any person appointed as neutral arbitrator shall disclose to the AAA any circumstance likely to affect impartiality, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others. Upon objection of a party to the continued service of a neutral arbitrator, the AAA shall determine whether the arbitrator should be disqualified and shall inform the parties of its decision, which shall be conclusive. (Emphasis supplied).

arbitration with the American Arbitration Association (hereafter "AAA"). A three person panel was chosen in November of 1995. After several hearing dates and continuances, the matter was set for hearing on October 21, 1996. On October 2, 1996, after the panel had entered a prejudgment order attaching a Matrix commission fund account, Matrix filed a letter of protest with the AAA and requested a new panel, claiming the arbitrators, "had wrongfully prejudged this matter," and had wrongfully ordered Matrix to divulge a confidential list of its subagents. That request was denied by the AAA. The panel then entered an order compelling discovery. In December of 1996, Richard Miller, the attorney for Matrix, wrote to the arbitrators asking them to recuse themselves because the panel's actions showed bias which violated one of the canons of the Code of Ethics for Arbitrators in Commercial Disputes. A letter from arbitrator Richard Adams to Miller declined the request. The panel reaffirmed it's orders for discovery to be completed by Matrix. There was no compliance by Matrix with the discovery order.

In February, 1997, Matrix again filed a motion with the AAA to appoint a new panel and specifically pointed out bias by one of the arbitrators on the panel against the attorney for Matrix. Specifically, the motion pointed to a newspaper account of the acrimonious breakup of a law firm in 1991 which had earlier been created by the merger of the Miller firm with a firm which had been represented by Adams. The motion said the conduct of Adams in the arbitration exhibited a continuing "vendetta against Richard Miller", and those actions had ". . . so poisoned this arbitration and the attitudes of the other panel members that a new panel must be appointed . . ." Miller also contended on behalf of Matrix that every ruling in the case had gone against his client and was entered without applicable authority. On March 17, this motion was denied by the AAA, and the matter set for hearing on March 31, 1997. Again on March 26,1997 Miller, on behalf of

Matrix, sent a letter to the AAA saying it would seek judicial relief.[2]

On March 26, Arbitrator Adams faxed a letter to Miller stating he had heard from the AAA that Matrix intended to file suit against the AAA and the individual arbitrators "to attempt to block the hearing of this matter presently set for March 31, 1997. If you ask for a temporary restraining order, the arbitrators wish an opportunity to be heard." The AAA answered Miller by letter on March 27 advising Miller that the AAA's decision to reaffirm the arbitrator panel was made pursuant to a Arbitration Rule 19 that allowed it to make such decisions, and in

> ". . . order to maintain its role as neutral case administrator the AAA does not generally appear or participate in litigation relating to an arbitration. Therefore, it is not necessary or proper to name the AAA as a party in the event this matter proceeds to court review. We will, of course abide by an order of the court regarding the continued service of the arbitrators."

On March 28, and without further notice, Matrix filed in Jackson County Circuit Court a petition in prohibition and mandamus against only the AAA (TMI was *not* denominated as a party nor were the three members of the panel) requesting the AAA dismiss the panel of arbitrators in the pending arbitration matter between TMI and Matrix. The Matrix petition, among other things, alleged: it would not be allowed to introduce certain evidence; would not be allowed to cross examine witnesses; would be limited in its number of witnesses; TMI "at the hearing" would be able to put on hearsay and objectionable evidence and Matrix would not be allowed to object; the arbitrators had issued a prejudgment attachment; and Matrix had been ordered pursuant to discovery to provide the names of its other sales agents. Miller took the petition to respondent, Presiding Judge O'Malley who was sitting in for the other respondent, Judge Del Muro. O'Malley entered an Order of the

---

**2.** The letter reiterated Matrix's allegations of due process because of pre-hearing rulings of the panel. It also stated that if a new panel was not to be obtained, Matrix would have, ". . . no other option but to file against the association and the panel . . . for injunctive or other relief." The letter concluded by asking the name of the attorney for the AAA before Matrix approached the court.

same date against the AAA stating the AAA had notice of the filing of the Matrix petition and had by letter said it would not participate in a hearing but would abide by any judicial orders with regard to the continued service of the arbitrators. The Order found the panel had been arbitrary and biased against Matrix, and declared the arbitrators should be recused and all documents and orders and other papers in the arbitration proceedings should be sealed and not relied upon in any manner. Later in the day, Miller presented a copy of the Order he had just obtained to the AAA office. TMI has never been served with a copy of the Matrix petition, nor with the Circuit Court Order of March 28. The AAA and TMI (which was subsequently allowed to intervene) moved to dismiss for lack of jurisdiction, or to have a hearing to set aside the March 28 Order. The individual arbitrators orally asked for reconsideration. On May 13, Judge Del Muro, after holding a hearing on March 13, 1997,[3] upheld the previous Order saying the court had an equitable duty to intervene when impartiality of the arbitrators is raised. TMI then brought this writ to prohibit enforcement of the March 28 and May 13 Orders of Respondents, asserting (1) lack of jurisdiction of the court to order a recusal of arbitrators and the sealing of arbitration documents, and (2) that even if the respondents had jurisdiction to make the Orders, their authority was exceeded by issuing an ex parte order in mandamus of March 28 which was without notice to the relator and without compliance of service as required by Rule 94.

■ Missouri has adopted an arbitration law fashioned after the federal act. §§ 435.350–470, RSMo 1994. (All further statutory references are to RSMo 1994); *Sheffield Assembly of God v. American Ins.*, 870 S.W.2d 926, 929 (Mo.App.1994). The purpose of the law is to afford parties the chance to reach a final result to their differences in a quicker and cheaper manner than afforded by court litigation. *Prima Paint Corp. v. Flood and Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d

1270(1967); *Western Waterproofing Co. v. Lindenwood Colleges*, 662 S.W.2d 288, 291 (Mo.App.1983). Arbitration agreements under § 435.350 are valid, enforceable and encouraged under Missouri law. *Reis v. Peabody Coal Company*, 935 S.W.2d 625, 629–30 (Mo.App.1996). The scope of arbitration is defined by the contract between the parties. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). One of the purposes of the law is to have as little interference as possible from the courts. *Masonic Temple Association v. Farrar*, 422 S.W.2d 95, 109 (Mo.App.1967).

■ Returning to the initial question, it appears there is no authority in our statute or case law covering this situation, and the question remains, do the courts, prior to hearing or entry of an arbitration award by arbitrators, in a situation where the parties have agreed to arbitration covered by the statutes, have the authority, and hence the jurisdiction, to step in and order a change of arbitrators and negate pre-judgment rulings of the arbitrators prior to the arbitration award. Missouri's statutes refer to any remedy becoming available after an award. Section 435.400 requires the courts to confirm arbitration awards unless grounds for vacatur under Section 435.405 exist. Section 435.405, which is similar to the federal Uniform Arbitration Act reads:

**Vacating an award**

1. Upon application of a party, the court shall vacate an award where:

   (1) The award was procured by corruption, fraud or other undue means;

   (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

   (3) The arbitrators exceeded their powers;

   (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear

---

**3.** The arbitrators sought to set aside the March 28 order. Appearing with Adams at the hearing were the other two arbitrators, Philip Brown and Donald Giffin, who, like Adams, were attorneys. TMI appeared by counsel even though it was still not a party. Matrix challenged TMI's standing, but the court, as stated earlier, allowed TMI, now the relator, to intervene.

evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 435.370, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement and the issue was not adversely determine in proceedings under section 435.355 and the party did not participate in the arbitration hearing without raising the objection;

but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

2. An application under this section shall be made within ninety days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within ninety days after such grounds are known or should have been known.

3. In vacating the award on grounds other than stated in subdivision (5) of subsection 1 of this section the court may order a rehearing before new arbitrators chosen as provided in the agreement, or in the absence thereof, by the court in accordance with section 435.360, or if the award is vacated on grounds set forth in subdivisions (3) and (4) of subsection 1 of this section the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with section 435.360. The time within which the agreement requires the award to be made is applicable to the rehearing and commences from the date of the order.

4. If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award.

Court intervention prior to award is set out in Sections 435.350 and 435.355, which hold that a contract provision to submit an existing controversy to arbitration is enforceable and that upon application of a party to enforce the agreement, or alternatively to stay a proceeding, the provision is to be taken up by a court having jurisdictions and decided promptly. In such cases, "the court proceeds summarily without regard to the justiciability of the disputes asserted for arbitration." *Village of Cairo v. Bodine Contracting Company,* 685 S.W.2d 253, 258 (Mo. App.1985). Neither party to the case at bar has questioned the fact the contract called for arbitration of this dispute or that a stay should be granted. Section 435.360 states:

If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement.

This section does not apply to the issue here as the contract provided that the Commercial Arbitration Rules of the AAA would apply, and the arbitrators on this panel of three were chosen by the parties according to the rule. A list was submitted to both sides by the AAA, each side could make five peremptory objections, and then, in order of preference, rate the remaining names. Commercial Rule 19, agreed to by Matrix and TMI, provides that the AAA is to fill any vacancy from names remaining on the list.

■ Matrix suggests the circuit court had jurisdiction to hear its writ pursuant to § 478.070 which grants original jurisdiction to the court over all cases civil and criminal, and to determine original remedial writs. However, § 435.430 of Missouri's Uniform Arbitration Act, which deals with court jurisdiction, states that courts are given jurisdiction, ". . . to enforce the agreement under Sections 435.350 to 435.470 and to enter judgment on an award thereunder."

■ Matrix further contends, as it did before Judge Del Muro in referring to TMI, that TMI has ". . . no standing to complain. They are not parties here. It's between us and the AAA, and they have agreed to proceed . . . and . . . to abide by the decision of this court." Matrix misconceives its ability

to keep the party to the contract, and the other party to the arbitration, from any proceeding which would halt the arbitration, recuse the panel, and void all actions of the panel three days prior to hearing in an arbitration. The AAA letter was ineffective to confer jurisdiction on the circuit court to enter this order. That letter merely stated the AAA by agreement and by rule was not to enter the thicket of judicial action regarding arbitrator misconduct or prejudice.

Also, an ipse dixit conclusion reached by Matrix is that since the panel of arbitrators is biased, it is unable to act and therefore Section 435.360 kicks in and allows the circuit court to appoint successors. This section applies where the parties to the arbitration have made no contract provision for replacements. That is not the situation here. Matrix has repeatedly asserted in both courts that the evidentiary rulings of the arbitrators revealed their bias. There is nothing in the record to show that the rulings of the arbitrators were motivated by anything other than their best and honest judgment. *National Ave. Bldg. Co. v. Stewart*, 910 S.W.2d 334, 346 (Mo.App.1995).

■■■ Referring back to the question presented, several answers emerge. First, the statutes on arbitration limit court intervention until after an award where there are allegations of arbitrator bias or prejudice. In *Sheffield Assembly of God, supra*, 870 S.W.2d at 929–30, a potential for bias of one of the panel of arbitrators was discovered after submission and before award. As here, the AAA reaffirmed the appointment. It was not until the award was presented to the court for confirmation under § 435.400, that the appellant sought to vacate under § 435.405.1(2). That this court affirmed the circuit court in *Sheffield* on the issue of insufficient evidence to vacate is not the point. What is instructive is that in the statutory procedure the party claiming an unfair arbitrator has to wait until an arbitration award is presented to be given judgment status to present this claim. Where there is a valid and enforceable contract between the parties which provides for a prescribed, non-judicial replacement method, that method will be followed. In short, there is scant court authori-

ty for court intervention into an arbitration proceeding prior to award. In *Aerojet–General Corp. v. American Arbitration Ass'n*, 478 F.2d 248, 250—51 (9th Cir.1973) the issue was the place of arbitration and the court, after saying judicial review prior to award "should be indulged, if at all, only in the most extreme cases," then said an incorrect decision (by a district court) on the place for hearing, New York versus California, "may cause irreparable harm....."; *Gaer Brothers v. Mott*, 144 Conn. 303, 130 A.2d 804 (1957), and 65 ALR 2d 755 (1959). Second, even if authority for court intervention could arise in a case such as this, any court ruling based on a petition, without having the other party to the pending arbitration notified, cannot stand.

This court does not entirely rule out a factual situation in which court intervention would be justified. It would be a closer case where, even with an agreement such as in this case, an arbitrator was discovered to be in the employ of one party as an adjuster and being paid a per diem by that party while serving on an arbitration case, and was not removed. *Orr v. Farmers Mutual Ins. Co. of Missouri*, 356 Mo. 372, 201 S.W.2d 952, 953—56 (1947). Suffice it to say, that under these facts, and with the stated purpose of arbitration to speed up dispute resolution without resort to the courts, there was no authority to support the circuit court's jurisdiction to hear the Matrix petition. Under this contract between TMI and Matrix, TMI should not have been excluded from any proceedings where there was an active and ongoing arbitration process in which a hearing was scheduled within a few days. The American Arbitration Association, having made a decision on the arbitrators, was out of the picture, as were the individual arbitrators. Contrary to Matrix's stance in circuit court and here, TMI was the only party with any interest in the matter. In sum, Matrix could not exclude TMI by (a) denominating its petition for writ in circuit court as an action in mandamus rather than what it resembled, or for a permanent injunction, or (b) by unilaterally denominating AAA as the sole party defendant.

The preliminary order in prohibition is made absolute. The March 28 and May 13 Orders were entered without jurisdiction and are not to be enforced. Relator and Matrix are to return to the arbitration process for which they contractually agreed.

All concur.