GROUP HEALTH PLAN, INC. and Healthcare USA, of Missouri, Respondents.

v.

BJC HEALTH SYSTEMS, INC., Appellant,

No. ED 77705.

Missouri Court of Appeals, Eastern District, Division One.

Sept. 26, 2000.

Thomas C. Walsh, Douglas W. King, Nathan L. Garroway, Bryan Cave LLP, St. Louis, for appellant.

Alan E. Popkin, Mark G. Arnold, Omri E. Praiss, Husch & Eppenberger, LLC, St. Louis, for respondents.

RICHARD B. TEITELMAN, Judge.

Appellant BJC Health Systems, Inc. appeals from a final judgment and permanent injunction entered by the Circuit Court of St. Louis County enjoining Appellant from receiving documents ordered to be produced to it by an arbitrator in an arbitration pending between Appellant and Respondents, Group Health Plan, Inc. and Healthcare USA, of Missouri. We affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

On March 12, 1997, Appellant and Respondents entered into a Global Capitation Agreement (the "GC Agreement"). Under the GC Agreement, Appellant and its affiliated hospitals were to provide health care services to persons enrolled in health care plans sponsored by Respondents.

Pursuant to Section 8 of the GC Agreement, Appellant and Respondents agreed to submit any disputes between them to arbitration. Section 8 of the GC Agreement further provided that "[t]he arbitrators shall have no authority to award any punitive or exemplary damages, or to vary

or ignore the terms of this Agreement, and shall be bound by controlling law."

Pursuant to Section 10.11 of the GC Agreement, Appellant and Respondents agreed that Missouri law would control their disputes. Specifically, Section 10.11 provides that "[t]o the extent not preempted by Federal Law, this Agreement shall be governed by and construed in accordance with the laws of the State of Missouri and the United States of America."

On or about January 5, 2000, Appellant initiated an arbitration action against Respondents (the "Present Arbitration"). In the Present Arbitration, Appellant claims that Respondents breached various provisions of the GC Agreement. In response, Respondents filed their affirmative defenses and a counterclaim against Appellant.

### The Unity Arbitration

In October, 1999, Respondents and Unity Health Network, LLC ("Unity") arbitrated a dispute. The Unity Arbitration concerned a Network Participation Agreement (the "NP Agreement") between Respondents and Unity. The NP Agreement has different substance and terms than the GC Agreement between Appellant and Respondents.

Due to the significant amount of highly confidential information exchanged during the course of the Unity Arbitration, Respondents and Unity entered into a Protective Order. The Protective Order was signed by the three-member arbitration panel. Respondents understood that the "proceedings of the [Unity] arbitration would remain confidential." Respondents agreed to produce their confidential records because the documents that were included in the discussion were related specifically to Respondents' relationship with Unity.

### The Underlying Discovery Dispute

In the course of discovery in the Present Arbitration, on March 15, 2000, Appellant

requested that the arbitrator issue a "Subpoena for Taking Deposition" directed to Unity. In its subpoena, Appellant requested that Mr. John Thomas, the General Counsel of Unity, provide testimony and produce a copy of the transcript and award from the Unity Arbitration, as well as a copy of any exhibits introduced at the hearing, including deposition transcripts or other discovery introduced as evidence in the Unity Arbitration.

In response, Respondents filed a Motion to Quash Appellant's subpoena. Thereafter, Ms. Elise Dunitz Brennan, the arbitrator, entered an order denying Respondents' Motion to Quash and issuing Appellant's subpoena. The order provided that any documents produced by Unity in response to Appellant's subpoena will be for "attorney-eyes-only."

### Trial Court Proceedings

On March 31, 2000, Respondents filed a Verified Petition for Injunction and Motion for Temporary Restraining Order and Preliminary Injunction seeking to enjoin Appellant from obtaining any confidential records from the Unity Arbitration. In support of the request for injunctive relief, Respondents principally argued that the arbitrator exceeded her authority and disregarded Missouri law in issuing Appellant's subpoena because, under Section 435.014 RSMo, 1994,[1] all the records from the Unity Arbitration are "confidential" and "not subject to discovery."

The trial court granted a temporary restraining order in favor of Respondents and against Appellant. Thereafter, the court heard evidence and argument by counsel concerning this matter. Mrs. Davina Lane, Respondent GHP's CEO and President, testified concerning the highly confidential nature of the documents produced by Respondent during the Unity Arbitration, including specific provider contracts, fee schedules, as well as patient records. Mrs. Lane stressed that Respon-

---

1. All further statutory references are to RSMo 1994 unless otherwise noted.

dents would suffer irreparable harm if Appellant was provided access to the confidential records from the Unity Arbitration, mainly because Appellant is a competing organization.

Finally, Mrs. Lane explained that the provision in the arbitrator's order that the documents would be marked for "attorney-eyes-only" did not give her much comfort:

My sense is that, though I understand that and firmly believe that all the attorneys involved have an ethical duty and would be careful not to divulge information, I think it is almost impossible for attorneys who represent large organizations such as [Appellant] to not pass on information in other settings. This is not the only area in which these attorneys will represent [Appellant]. It is impossible to think that information gleaned from these documents will not be passed in another context.

Appellant did not challenge or undermine Mrs. Lane's testimony concerning any of the above issues or call any witnesses during the preliminary injunction hearing.

On April 4, 2000, the trial court issued a Final Judgment granting a permanent injunction in favor of Respondents. This appeal follows.

### MOTION TO DISMISS FOR MOOTNESS

■ As a threshold issue, we must first determine whether we have jurisdiction to hear this appeal. While the appeal was pending, Respondents filed a Motion to Dismiss Appeal on mootness grounds because the arbitrator in the present arbitration between the parties had already heard the case and had rendered a decision. Respondents argue that any decision by this court would have no practical effect on a presently existing dispute between Appellant and Respondents and the appeal should be dismissed.

■ "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *C.C. Dillon Co. v. City of Eureka*, 12 S.W.3d 322, 325 (Mo. banc 2000) (citations omitted). When an event occurs which makes a decision on appeal unnecessary or which makes it impossible for this Court to grant effectual relief, the appeal is moot. *Schulte v. Schulte*, 949 S.W.2d 225, 226–27 (Mo.App. E.D.1997). Missouri courts do not determine moot cases. *Public Water Supply Dist. No. 5 of Jefferson County v. City of DeSoto*, 8 S.W.3d 206, 208 (Mo.App. E.D.1999). Therefore, if we determine that the issues presented are moot in light of the decision rendered by the arbitrator, we must dismiss.

The record reflects that the arbitrator already entered an award disposing of many of the arbitration issues. However, she denied a number of Appellant's claims for lack of evidence or lack of supporting documentation and has retained jurisdiction, with the parties' consent, to determine a number of outstanding issues. As such, her award is not final and could conceivably be affected by the materials Appellant seek to discover. A decision rendered by this Court would have a practical effect on an existing controversy between the parties. Therefore, the claims are not moot.

### DISCUSSION

■ Appellant argues that the trial court erred in enjoining it from receiving the subpoenaed documents because the court was without jurisdiction to overrule a discovery ruling by an arbitrator in an ongoing arbitration. Appellant maintains that the trial court has no authority to intervene in an arbitration proceeding prior or to award to review an interlocutory discovery determination by an arbitrator that is not in excess of the arbitrator's jurisdiction. The issue of the trial court's jurisdiction to interfere with the enforce-

ment of an arbitrator's subpoena is one of first impression in Missouri.

■ Arbitration proceedings are favored and encouraged by the courts. *Westridge Investment Group, L.P. v. McAtee,* 968 S.W.2d 243, 245 (Mo.App. W.D.1998). The purpose of arbitration is to provide a speedy, efficient, and less expensive alternative to court litigation. *Id.* As a general rule, courts should refrain from interfering with arbitration proceedings. *See State ex rel. Telecom Management, Inc. v. O'Mally,* 965 S.W.2d 215, 220 (Mo.App. W.D.1998).

■ Missouri has adopted the Uniform Arbitration Act (UAA), which is fashioned after the Federal Arbitration Act (FAA). §§ 435.350–435.470; *Westridge Investment Group, L.P. v. McAtee,* 968 S.W.2d at 245; *State ex rel. Telecom Management, Inc. v. O'Mally,* 965 S.W.2d at 218. "The purpose of the UAA is to afford parties the opportunity to reach a final disposition of differences in an easier more expeditious manner than by litigation." *Westridge Investment Group, L.P. v. McAtee,* 968 S.W.2d at 245. Section 435.450 of the UAA provides that the Act shall be so construed as to effectuate the general purpose to make uniform the law of those states that enact it. *Western Waterproofing Co., Inc. v. Lindenwood Colleges,* 662 S.W.2d 288, 291 (Mo.App. E.D.1983). Consequently, "opinions of the courts of other jurisdictions which have adopted the Act are shown greater than usual deference." *Id.,* citing *Garver v. Ferguson,* 76 Ill.2d 1, 27 Ill.Dec. 773, 389 N.E.2d 1181, 1183 (Ill.1979). "If there is no Missouri authority, and there is no compelling policy to overcome the need for uniformity, provisions of the UAA should be construed consistent with the decisional law of other signatory states." *Heineman v. Charno,* 877 S.W.2d 224, 227 (Mo.App. W.D.1994).

Appellant is correct in its assertion that there is scant authority in Missouri for a trial court to interfere with arbitration proceedings prior to entry of an award. *Telecom Management Inc. v. O'Mally,* 965

S.W.2d at 220. Missouri courts, however, have not ruled out the possibility of a factual situation in which court intervention would be justified. *Id.* As such, we will look to other jurisdictions that have adopted the UAA to discern whether it is appropriate for a trial court to interfere with discovery proceedings during a pending arbitration.

Other jurisdictions have recognized the authority of the trial court to interfere, in limited circumstances, with an ongoing arbitration. *See May Construction Company, Inc. v. Thompson,* 20 S.W.3d 345, 351 (Ark.2000) (statutes that give the court authority to order arbitration and enforce subpoenas indicate that the court has jurisdiction and control in the arbitration proceedings in certain circumstances); *Integrity Insurance Company, in Liquidation v. American Centennial Insurance Company,* 885 F.Supp. 69, 72 (S.D.N.Y.1995) ("[i]mplicit within the power to compel compliance with an arbitrator's summons must be the power to quash that summons if it was improperly issued"); and *Hull Municipal Lighting Plant v. Massachusetts Municipal Wholesale Electric Company,* 414 Mass. 609, 609 N.E.2d 460 (Mass.1993) (it is within the court's power to vacate any subpoena that it determines is unreasonable, oppressive, irrelevant, or improper; if it is evident that the arbitrator has abused his discretion or authority in issuing the subpoenas, then the trial judge may overrule his decision). *See also, New England Energy, Inc. v. Keystone Shipping Co.,* 855 F.2d 1, 7 (1st Cir.1988) (The FAA "in certain situations empowers the court to choose arbitrators and enforce arbitration subpoenas. Thus, federal courts have jurisdiction to decide more than just the question of arbitrability, and if requested to do so, a court has the power to order compliance with an applicable state law.")

Section 435.380(1) states:

1. The arbitrators may issue or cause to be issued subpoenas for the attendance of witnesses and for the production

of books, records, documents and other evidence, and shall have the power to administer oaths. Subpoenas so issued shall be served, and upon application to the court by a party or the arbitrators, enforced, in the manner provided by law for the service and enforcement of subpoenas in a civil action.

As the trial court is charged with the duty to enforce an arbitrator's subpoena "in the manner provided by law," the trial court implicitly has the duty to refuse to enforce a subpoena that is contrary to Missouri law.[2] We now turn to the question of whether the trial court exceeded its limited jurisdiction in issuing an injunction in favor of Respondents.

In the case at bar, Appellant seeks to discover (1) transcripts of hearings; (2) exhibits introduced at the hearing (including deposition transcripts or other discovery introduced as evidence at the hearing); and (3) the award from the Unity Arbitration through a subpoena issued to the General Counsel for Unity Health Partners. Respondents argue that pursuant to Section 435.014, the trial court was correct in entering the injunction against Appellants.

Section 435.014(2) provides as follows:

2. Arbitration, conciliation and mediation proceedings shall be regarded as settlement negotiations. Any communication relating to the subject matter of such disputes made during the resolution process by any participant, mediator, conciliator, arbitrator or any other person present at the dispute resolution shall be a confidential communication. No admission, representation, statement or other confidential communication made in setting up or conducting such proceedings not otherwise discoverable or obtainable shall be admissible as evidence or subject to discovery.

Under Missouri law, then, all information relating to the Unity Arbitration is regarded as part of settlement negotiations and is not discoverable unless it is "otherwise discoverable or obtainable." *See, State ex rel. Webster v. Douglas Toyota III, Inc.*, 830 S.W.2d 491, 495 (Mo.App. S.D.1992). Appellant argued in the proceedings below that the materials sought are "otherwise discoverable" under Missouri law and that settlement negotiations are discoverable, though not necessarily later admissible as to the truth of statements made in the course of negotiations. *See The Thermos Co. and Nippon Sanso Corp. v. Starbucks Corp. and Pacific Market, Inc.*, 1998 WL 781120 at *3 (N.D.Ill. Nov.3, 1998); and *Glaxo, Inc. v. Torphram, Inc.*, 1996 WL 411487 at *5 (N.D.Ill.1996).

Regardless, however, of the statute's preclusive effect on discovery in the present arbitration, the parties to the Unity Arbitration also entered into a Stipulated

**2.** The FAA has been held under the Supremacy Clause to preempt any state law or policy which would restrict arbitrability. *Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1, 15–16 (1984). The Act was designed " 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate,' and place such agreements 'upon the same footing as other contracts.' " *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (citations omitted). However, the Act does not prevent the enforcement of agreements to arbitrate under different rules set forth in the Act itself. *Id.* at 478, 109 S.Ct. at 1255, 1256. Where parties have made a choice of law provision, enforcing the law according to the terms of the agreement "is fully consistent with the goals of the FAA." *Id.* at 478, 109 S.Ct. at 1256. "By permitting the courts to 'rigorously enforce' such agreements according to their terms, we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind" the FAA. *Id.*

The parties selected Missouri law in their contract. A choice of law provision in a contract is generally enforced so, we will employ Missouri law in determining whether Appellant may properly subpoena the records relating to the Unity Arbitration. *Stone v. Crown Diversified Industries Corp.*, 9 S.W.3d 659, 666 (Mo.App. E.D.1999) (citations omitted).

Protective Order, which was signed by both parties and the Unity Arbitration panel, providing that materials related to the Unity Arbitration were considered to be confidential if so designated by the parties. The relevant sections of the Protective Order state as follows:

1. Any Party may designate as "Confidential" any Discovery Material that has not generally been made available by that Party to the public at large, and which that Party believes, in good faith, constitutes, contains, reveals or reflects proprietary financial, business, technical, or other confidential information, which would harm its interests if it were disclosed to the public. Any Discovery Material designated as "Confidential" shall be disclosed only to the following persons: (i) persons who have entered their appearance as Counsel of Record in this action, or persons working under the direction of such counsel . . .; (ii) the Parties to this action; (iii) the American Arbitration Association ("AAA"); (iv) experts or consultants retained by Counsel of Record in connection with this arbitration . . .; (iv) deponents; (vi) stenographers and reporters in connection with the recording of sworn testimony; (vii) such other persons as counsel for the party producing the documents agrees in writing in advance; and (viii) any other person who may be designated as qualified to receive confidential documents or information by further order of the arbitrators.

2. The failure to designate any Discovery Material as "Confidential" shall not constitute a waiver of its confidential nature, and any party may later designate any previously produced Discovery Material as "Confidential" in accordance with Paragraph 1 hereof and such Discovery Material shall thereafter be kept confidential in accordance with the terms of this Order.

3. All Discovery Material designated pursuant to this Order as "Confidential" shall be utilized solely for purposes of this arbitration and for no other purpose. Neither those materials nor their contents shall be disclosed to any person other than those persons listed in Paragraph 1 of this Order.

\* \* \*

5. No person shall be given access to any Discovery Material designated as "Confidential" pursuant to this Order unless such person is entitled to access to such Discovery Materials pursuant to Paragraph 1 of this Order.

\* \* \*

13. Absent written modification hereof by the Parties hereto or further order of the arbitrators, the provisions of this Protective Order that restrict the disclosure and use of Confidential Information shall survive the final disposition of this arbitration and continue to be binding on all persons subject to the terms of this Protective Order.

■ As this protective order was signed by the arbitration panel, we will give it the deference it would receive as any other arbitration award. Missouri courts have stated that the sanctity of arbitration awards is supported by public policy. *Madden v. Kidder Peabody & Co., Inc.*, 883 S.W.2d 79, 84 (Mo.App. W.D. 1994), citing *Clean Coverall Supply Co. v. Local Union No. 682*, 688 F.Supp. 1364, 1366 (E.D.Mo.1988). Therefore, judicial review of arbitration awards is limited. *Western Waterproofing Co., Inc. v. Lindenwood Colleges*, 662 S.W.2d at 291.

■ Neither party to the Unity Arbitration challenges the validity of the protective order, and the order itself has no stated time limitation. "[L]ifting a protective order to disclose documents should only occur when intervening circumstances have diminished or eliminated the reasons why the protective order was issued."

*Rogers v. Proctor & Gamble Company,* 107 F.R.D. 351, 352 (E.D.Mo.1985), citing *Iowa Beef Processors, Inc. v. Bagley,* 601 F.2d 949, 955 (8th Cir.1979), *cert. denied,* 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979). As Appellant has not demonstrated that any intervening circumstances have since diminished or eliminated the reasons for the protective order, we must uphold the decision of the arbitration panel in the Unity Arbitration to protect the confidentiality of the documents submitted by Respondents and Unity and marked confidential.[3]

Though we recognize that arbitrators enjoy wide latitude in granting discovery pursuant to arbitration proceedings, such latitude does not encompass the abrogation of a decision made previously by an arbitration panel in an unrelated dispute. To permit arbitrators to conduct illimitable discovery that is unrestricted even by a confidentiality agreement signed by an arbitration panel would have a chilling effect on the willingness of parties to arbitrate their disputes. Few parties would be willing to submit confidential materials to an arbitrator knowing that those materials could then be freely discovered in future unrelated proceedings, regardless of any actions taken to ensure confidentiality.

We believe that the UAA, like the FAA, must be interpreted so "as to further, rather than impede, arbitration." *See Integrity Insurance Company, in Liquidation v. American Centennial Insurance Company,* 885 F.Supp. 69, 71 (S.D.N.Y. 1995) (citation omitted). To that end, it is improper for an arbitrator to require a nonparty to an arbitration to turn over confidential information in violation of a protective order entered in a previous arbitration. If the information sought is relevant to the present arbitration, it can surely be discovered through other means.

We find that the trial court did not exceed its jurisdiction in entering a permanent injunction against Appellant preventing Appellant from discovering confidential information relating to the Unity Arbitration in violation of a protective order. The judgment of the trial court is affirmed.

ROBERT G. DOWD, Jr., P.J. and MARY RHODES RUSSELL, J., concur.

---

3. The Colorado Court of Appeals recently faced a similar issue in *A.T. v. State Farm Mutual Automobile Insurance Company,* 989 P.2d 219 (Colo.Ct.App.1999). In that case, the trial court determined that medical information disclosed during a previous arbitration was not confidential and allowed it to be discovered. The court relied on the fact that "the parties had not entered into a confidentiality agreement or disclosure-restriction provision regarding the arbitration" and "the arbitration was not conducted under the rules of the American Arbitration Association, which would have provided confidentiality, but rather under the Uniform Arbitration Act." *Id.* at 220. The appellate court affirmed the decision, noting that "[t]here is a presumption that the public has access to court records." In so holding, the Colorado court implicitly held that parties could protect their confidential documents by so agreeing or by using arbitration rules that provided confidentiality.

In the case at bar, the parties to Unity Arbitration entered into a binding protective order. The record reflects, additionally, that the Unity Arbitration, unlike the present arbitration, was conducted under the rules of the American Arbitration Association. As such, the parties took measures to ensure that the documentation related to the proceedings would remain confidential.