**CPK/KUPPER PARKER COMMUNICATIONS, INC.,[1] Respondent,**

v.

**HGL/L. GAIL HART, Appellant.**

No. ED 78661.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 31, 2001.

1. The Commercial Arbitration Rules provide that arbitration proceedings are confidential. When suit was filed Kupper Parker Communications, Inc. requested that the parties be identified only by initials to keep their identity confidential. The trial court granted this request and the case style came to this court as CPK v. HGL. Because Supreme Court Rule 81.03 requires the case style on appeal to remain the same as in the circuit court, we retain the inverted initials as the case style. The purpose of Rule 81.03, however, is to provide consistent case tracking, not to allow parties to litigate anonymously. The courts of Missouri are public and open forums and only special circumstances, such as to protect children, justify confidentiality. This is no such case.

David O. Kreuter, Kreuter & Gordon, P.C., Clayton, MO, for appellant.

Patrick R. Gunn, Sharon R. Wice, Gunn and Gunn, P.C., St. Louis, MO, for respondent.

JAMES R. DOWD, Judge.

This is an arbitration case. The arbitrator denied Kupper Parker Communications' request to depose 20 witnesses and Kupper Parker petitioned the circuit court to stay the arbitration and to determine the extent of deposition discovery permitted under the agreement to arbitrate. The circuit court stayed the arbitration until Kupper Parker could take "such depositions as it shall feel necessary." L. Gail Hart appeals, arguing that the circuit court is without jurisdiction to overturn an arbitrator's denial of a discovery request. We reverse.

Hart was an employee of Kupper Parker. On January 15, 1993, Kupper Parker required her to sign a Grievance Procedure and Agreement to Arbitrate "in consideration of . . . continued employment." According to that Agreement, "all disputes, claims, charges or grievances of whatever nature . . . between the parties shall be finally resolved by arbitration . . ."

On March 2, 1994, Kupper Parker terminated the employment of Hart. On August 12, 1994, Hart timely filed charges of discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights. Hart alleged that Kupper Parker discriminated against her on the basis of her age, sex and disability, in violation of Title VII, the Age Discrimination in Employment Act, the Americans with Disability Act, and the Missouri Human Rights Act.

Pursuant to the Agreement to Arbitrate, the matter was referred to arbitration. During the arbitration, Hart identified twenty-two potential witnesses. Kupper Parker sought subpoenas to depose all of these witnesses, but the arbitrator ruled that the Agreement to Arbitrate limited each party to three depositions unless the other party agreed to more. Hart did not consent to more than three depositions.

On May 27, 1999, Kupper Parker filed a petition for declaratory judgment in the Circuit Court of St. Louis County, requesting that the court stay all proceedings in the arbitration and determine the extent of deposition discovery permitted by the arbitration agreement. Hart filed her answer on June 9, 1999. On October 6, 1999, Hart filed a motion for judgment on the pleadings, which the court denied on December 9, 1999. On May 22, 2000, Kupper Parker filed a motion for summary judgment. On June 26, 2000, Hart filed her response to Kupper Parker's motion for summary judgment and filed her own motion for summary judgment. On August 10, 2000 the court denied Hart's motion and granted summary judgment in favor of Kupper Parker. In its Order the court allowed Kupper Parker to take all the depositions it felt necessary to defend against Hart's claims of discrimination.

Hart then requested that the arbitrator schedule a hearing "as soon as practical." In response, Kupper Parker filed a motion in the Circuit Court on September 6, 2000, to amend judgment and to stay the arbitration until Kupper Parker could depose the twenty-two individuals Hart named as possible witnesses. The court granted this motion on October 10, 2000, stating:

This Court's Judgment of August 10, 2000 is hereby amended to provide that Plaintiff [Kupper Parker] is authorized to take such depositions as it shall feel necessary in defense of Defendant's [Hart's] claims, the scheduling of such depositions to be within a time frame reasonably determined by Plaintiff's counsel, considering the schedules of the parties and their counsel as well as the schedules of the prospective witnesses. The parties shall not seek further proceedings before the American Arbitration Association until discovery shall be verified as completed or until further order of this Court.

Hart appeals.

 Missouri has adopted the Uniform Arbitration Act (UAA),[2] which is fashioned after the Federal Arbitration Act (FAA).[3] *Group Health Plan, Inc. v. BJC Health Systems, Inc.*, 30 S.W.3d 198, 202 (Mo.App. E.D.2000). The FAA and Missouri's Arbitration Act are substantially similar. *Cairo v. Bodine*, 685 S.W.2d 253, 257 (Mo.App.1985). Section 2 of the FAA requires state courts to enforce written agreements to arbitrate when the transaction involves or affects interstate commerce, unless there is a basis under state law or in equity that is *applicable to all other contracts* that renders the agreement revocable or unenforceable. The FAA thus implements a national policy favoring arbitration and withdraws a state's power to deny arbitration when the litigation involves interstate commerce. See *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); 9 U.S.C. § 2.

Congress's express goal in passing the FAA was to offer parties a way to avoid "the delay and expense of litigation"[4] and to "minimize[ ] hostility and ... disrupti[on] of ongoing and future business dealings among the parties."[5] Proponents claim other advantages of arbitration are that it is less complex and reduces the burden on the court system.

The procedures under the Rules of the American Arbitration Association are informal by design. An ordinary letter summarizing the claim and stating the relief sought typically serves as a demand for arbitration. No responsive pleading is required. The arbitrator, often selected by the parties themselves, is expected to have expertise in the subject matter of the controversy. In order to speed the process and to reduce expenses certain constitutional, statutory and court created rights have been sacrificed. One of these is the right to depose every witness endorsed by one's opponent. Absent a compelling reason, arbitrators ordinarily direct limited document disclosure and deny requests for interrogatories and depositions. The hearing is marked by informality. Rules of evidence do not apply unless the arbitrators choose to enforce them. And a stenographic record of the hearing is kept only if one of the parties makes arrangement for a court reporter.

 In order to secure the advantages of arbitration and to preserve arbitration as a substitute for, and not as a mere prelude to, litigation, judicial oversight of arbitration is strictly limited. *Sheffield Assembly of God Church, Inc. v. American Ins. Co.*, 870 S.W.2d 926, 929 (Mo.App. W.D.1994); *Eljer Mfg., Inc., v. Kowin Dev. Corp.*, 14 F.3d 1250 (7th Cir.1994). The scope of judicial review of an arbitration award "is among the narrowest known to

---

**2.** §§ 435.350–435.470 RSMo 1994.

**3.** 9 U.S.C. §§ 1–16.

**4.** S.Rep. No. 68–536, at 3 (1924).

**5.** H.R.Rep. No. 97–542, at 13 (1982)

the law." Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7, 886 F.2d 275, 276 (10th Cir.1989). This is a policy decision made by the U.S. Congress and by the Missouri General Assembly. 9 U.S.C. §§ 1—16; §§ 435.350–435.470 RSMo 1994. Missouri has limited the scope of judicial review of arbitration awards by statute since 1835. Revised Statutes of Missouri at 70–74 (1835).

The U.S. Supreme Court in *United Paperworkers International Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) makes clear that it is not the function of courts to supervise arbitrators. In *United Paperworkers* the court directed that:

> where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute. Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.

*Id.* at 38, 108 S.Ct. 364.

There is nothing in either the FAA or the UAA that suggests a court has any power to order or prohibit discovery in an arbitration proceeding. The only statutory reference to the courts' power over arbitration discovery is the specific grant of power to the courts to enforce subpoe-

nas issued by arbitrators found in § 435.380.1 RSMo. That statute provides:

> The arbitrators may issue or cause to be issued subpoenas for the attendance of witnesses and for the production of books, records, documents and other evidence, and shall have the power to administer oaths. Subpoenas so issued shall be served, and upon application to the court by a party or the arbitrators, enforced, in the manner provided by law for the service and enforcement of subpoenas in a civil action.

■ Kupper Parker argues that after the arbitrator refused to allow more than three depositions, the trial court acquired jurisdiction to stay the arbitration proceedings and to order additional depositions. Initially, Kupper Parker claims the trial court had jurisdiction to stay the proceedings because it was "determining the existence of the arbitration agreement" under § 435.355.[6] Even though both parties acknowledge the existence of the agreement, Kupper Parker advances the theory that *"under the arbitrator's ruling* limiting the extent of discovery depositions, there is no agreement to arbitrate ...." (emphasis added). The rationale behind this argument, evidently, is that the arbitrator's denial of Kupper Parker's request for nineteen depositions was so gross a misinterpretation of the contract that it amounted to an act "beyond the authority of the arbitrator" and the circuit court may take jurisdiction in such a case.

The only reference in the entire employment agreement to depositions is on page 44. It states:

> At that preliminary hearing, the arbitrators shall establish the extent of and

6. Section 435.355, in relevant part, reads:

On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party

denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

schedule for the production of relevant documents and other information, the identity of witnesses to be called and a schedule for each party to take up to three (3) depositions.

Kupper Parker contends that the provision for "up to three (3) depositions" does not limit the number of depositions the parties are entitled to, only the power of the arbitrator to "schedule" depositions at the preliminary hearing.

■■■ Even if we assume the arbitrator's interpretation of the Agreement is erroneous, and we do not, that misinterpretation would not be in excess of the arbitrator's powers. *Lorenzini v. Group Health Plan, Inc.*, 753 S.W.2d 106, 108 (Mo.App. E.D.1988). The scope of arbitration is defined by the contract between the parties. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). The powers of the arbitrator are set and defined by the contract to arbitrate. *Westridge Investment Group, L.P. v. McAtee*, 968 S.W.2d 243, 245 (Mo.App. W.D.1998). According to the agreement to arbitrate here, "all disputes, claims, charges or grievances of whatever nature ... arising between the parties shall be finally resolved by arbitration." The agreement clearly provides: *"Any disputes relating to any discovery issues will be resolved by the arbitrators."* (emphasis added).

Section 435.355 authorizes the circuit court to determine the existence or nonexistence of a valid agreement to arbitrate, but once the circuit court here determined there was an agreement to arbitrate it had no authority to stay the arbitration proceedings. Kupper Parker is mistaken in its theory that jurisdiction to determine the existence of a valid agreement to arbitrate also provides jurisdiction to interpret the contract and impose that interpretation on the arbitrator.

Finally, Kupper Parker claims *Group Health Plan, Inc. v. BJC Health Systems, Inc.* is authority for the trial court's jurisdiction to stay an arbitration proceeding and to order the taking of depositions. In *BJC*, this court found that the circuit court had jurisdiction to determine if the arbitrator's request to issue a subpoena was lawful and, if not, to deny the subpoena. Kupper Parker invites us to extend this power to include circuit court jurisdiction to order discovery that the arbitrator denies. We decline the invitation.

In *BJC*, the plaintiff, Group Health Plan, Inc., requested documents, transcripts and exhibits from a prior arbitration between BJC Health Systems, Inc. (BJC) and Unity Health Network, LLC (Unity). *BJC*, 30 S.W.3d at 201. Due to the confidential information exchanged during the Unity–BJC arbitration, BJC and Unity entered into a Stipulated Protective Order, signed by the three-member arbitration panel, which provided that materials related to that arbitration were confidential. *Id.* at 203–04. After the arbitrator ordered BJC to produce those documents, BJC sought to enjoin Group Health Plan from obtaining those confidential records. *Id.* at 200. BJC argued that the arbitrator exceeded her authority and disregarded Missouri law in issuing Group Health Plan's request for a subpoena because under the Missouri Arbitration Act, § 435.014, all the records from the Unity Arbitration were "confidential" and "not subject to discovery." *Id.* at 201. The circuit court accepted this argument and enjoined that discovery. *Id.* at 199. Group Health Plan appealed, arguing that the circuit court lacked jurisdiction to overrule an interlocutory discovery determination by an arbitrator in an ongoing arbitration. *Id.* at 201. This court, citing § 435.380(1), held that because "the trial court is charged with the duty to enforce an arbitrator's subpoena 'in the manner

provided by law,' the trial court implicitly has the duty to refuse to enforce a subpoena that is contrary to Missouri law." *Id.* at 203.

The trial court in *BJC* had jurisdiction because the court was called upon to issue and enforce the summons and subpoena. Here there is no arbitrator's request for a summons to be issued or subpoena enforced, and so no occasion for the court to use its power. *BJC* is distinguishable from this case.

Conversely, we find *Thompson v. Zavin,* 607 F.Supp. 780 (C.D.Cal.1984) very close factually and conceptually to this case. In *Thompson* the court was asked to reverse the arbitrators' decision not to issue subpoenas compelling individuals to attend the arbitration hearing. *Id.* at 781. The court held that it had no jurisdiction to order an arbitration panel to issue subpoenas. *Id.* at 782–83. In coming to that conclusion, the *Thompson* court cited *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) for the proposition that courts are obligated to refrain from interfering with the procedural aspects of arbitration. In *John Wiley & Sons* the U.S. Supreme Court stated:

> Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.... Reservation of "procedural" issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort.
>
> In addition, the opportunities for deliberate delay and the possibility of well intentioned but no less serious delay ... are clear.

*Id.* at 557–58, 84 S.Ct. 909.

To permit Kupper Parker to appeal the arbitrator's decision to *deny* a deposition request would frustrate the purpose of arbitration. Arbitration is designed to be a less expensive, less time-consuming way of settling disputes. Hart filed her original complaint in 1994. She has still had no hearing. For the past two years Kupper Parker has tied her up in circuit court and now here appealing an interlocutory order on a discovery dispute generated by an arbitration agreement Kupper Parker wrote. If Missouri allowed every alleged misinterpretation of an arbitration agreement by an arbitrator to be litigated and appealed arbitrations would be a mere prelude to litigation and would, in the end, prove more time-consuming and expensive than litigation. The order of the circuit court is quashed because it had no jurisdiction to reverse an arbitrator's denial of a request to take depositions.

CLIFFORD H. AHRENS, P.J., and WILLIAM H. CRANDALL, JR., J., Concur.